UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BROADRIDGE SECURITIES PROCESSING SOLUTIONS, INC., and INVESTIGO CORPORATION, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:14-CV-167 ) |
| WRP INVESTMENTS, INC., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This breach of contract dispute is before the Court on Defendant WRP Investments, Inc.'s motion to transfer this action to the Northern District of Ohio, the district where WRP maintains its principal place of business. (Docket # 14.) WRP argues that transfer is appropriate due to that venue's convenience for the parties and witnesses, and because the interests of justice favor transfer.

Plaintiffs Broadridge Securities Processing Solutions, Inc., and Investigo Corporation (collectively "Broadridge") dispute WRP's motion, arguing that all of the convenience and interests of justice factors are either neutral or favor this Court maintaining the action. (Docket # 19.) WRP has filed its reply (Docket # 22); thus, the matter is ripe for ruling. For the following reasons, WRP's motion will be DENIED.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Broadridge Financial Solutions, Inc., is a multinational corporation providing data aggregation and advisor practice management software solutions to the financial services industry. (Pls.' Resp. 1-2.) The Plaintiffs, Broadridge Securities Processing Solutions, Inc., and

Investigo Corporation, are subsidiaries of Broadridge Financial, with the former being a Delaware corporation maintaining its principal place of business in New Jersey, and the latter being a Minnesota corporation with a principal place of business in Fort Wayne, Indiana. (Dft.'s Mot. 3-4.) Although Broadridge Financial has in excess of 5,000 employees, only about 50 work for Investigo in Fort Wayne, Indiana. (Dft.'s Mot. 4; Pls.' Resp. 1.)

By comparison, WRP is a broker-dealer with twenty-three employees operating out of a single office in Youngstown, Ohio. (Dft.'s Mot. 4.) Although WRP generates far less annual revenue than Broadridge, it is quite successful and does not claim financial constraints. (Pls.' Resp. 4.)

In 2010, Alan Giancaterino, then a Vice President at Broadridge, contacted WRP about acquiring its data management software services; WRP had previously used Albridge, Inc. (Dft.'s Mot. 4-5.) After extensive multi-year negotiations, most of which occurred either via email or phone (with a small amount taking place at WRP's office), the parties entered into a contract in March 2012. (Dft.'s Mot. 4; Pls.' Resp. 2.) In its simplest terms, Broadridge agreed to create and license a web-based software platform to help with WRP's management of its investment information. (Pls.' Resp. 2.)

In order for Broadridge to create the software platform, WRP was required to transfer all of its historical data from Albridge to a file transfer protocol site. (Dft.'s Mot. 5.) Once uploaded there, Broadridge would retrieve the data and transfer it to the software platform. (Dft.'s Mot. 5.) Ten Broadridge employees put in 1600 hours–almost exclusively from its Investigo office in Fort Wayne–transferring, processing, reviewing, and analyzing historical data. (Pls.' Resp. 3.) Broadridge employee David Dixon oversaw the project, and Dixon's supervisor, Kevin Lowe,

2

was also heavily involved. WRP also retained John Rutledge, a Denver-based outside consultant, to assist with the collection of its data. (Pls.' Resp. 2-3; Dft.'s Mot. 6.)

Unfortunately, the parties were unable to complete the transferring and uploading of WRP's historical data within the dates specified in the contract. (Pls.' Resp. 2.) Consequently, Broadridge filed its complaint on May 6, 2014, alleging that WRP breached the contract by failing to provide complete and accurate historical data, and alternatively, that WRP was unjustly enriched by Broadridge's efforts in implementing the software platform. (Docket # 1.) In its answer, WRP denies that it failed to provide its historical data, and raises an affirmative defense that Broadridge was the breaching party. (Docket # 11.)

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Under § 1404(a), a court may transfer a case if the moving party shows that: (1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve in the convenience of the parties and the witnesses as well as the interests of justice."[1] *Bajer Design Mktg. v. Whitney Design, Inc.*, No. 09 C 1815, 2009 WL 1849813, at *1 (N.D. Ill. June 26, 2009) (citation omitted). Section 1404(a) does not indicate the relative weight to be accorded each factor. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

---

[1] Neither party disputes that both courts have jurisdiction and are proper venues. Therefore, the analysis focuses on the third factor.

3

## III. ANALYSIS

### *A. Convenience to the Parties and Witnesses*

As the moving party, WRP "has the burden of establishing by reference to particular circumstances, that the transfer forum is clearly more convenient." *Id.* at 219-20. In evaluating convenience, the Court considers: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Bajer*, 2009 WL 1849813, at *2 (citation omitted).

#### 1. Plaintiffs' Choice of Forum

Broadridge's "choice of forum is generally entitled to substantial deference, particularly where the chosen forum is the [plaintiffs'] home forum." *Ambrose v. Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, at *2 (N.D. Ill. July 3, 2002). This deference is not absolute, however, "and the weight given to . . . [Broadridge's] choice of forum can vary depending upon the circumstances of each case." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). For instance, "where the plaintiff[s'] choice of forum is not the site of the material events, [its] choice of forum is entitled to less deference." *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, No. 02 C 8017, 2003 WL 1895390, at *1 (N.D. Ill. Apr. 17, 2003).

"Therefore, the substantial weight that would be applied to [Broadridge's] choice of its home forum in this instance may be diminished by the dispute's connection with Ohio, if significant." *OmniSource Corp. v. Sims Bros., Inc.*, No. 1:08-CV-89, 2008 WL 2756345, at *4 (N.D. Ind. July 14, 2008). "As a result, we will proceed to the second factor–the situs of

material events–before definitively weighing [Broadridge's] choice of its home forum." *Id.*; *see Valbruna Stainless, Inc. v. ADT Sec. Servs., Inc.*, No. 1:10-CV-77, 2010 WL 2772324, at *2-3 (N.D. Ind. July 12, 2010).

### 2. Situs of the Material Events

In a breach of contract case, the situs of material events "is where the business decisions causing the breach occurred[,] . . . considering where the agreement was primarily negotiated and signed. *Valbruna*, 2010 WL 2772324, at *3 (alterations in original) (quoting *OmniSource*, 2008 WL 2756345, at *4); *Capstone Int'l, Inc. v. Univentures, Inc.*, No. 3:10–CV-416, 2011 WL 4529380, at *3 (N.D. Ind. Aug. 4, 2011). Courts also consider the location of the services to be performed under the contract. *Capstone Int'l*, 2011 WL 4529380, at *3; *see Rosman Adjustment Corp. v. Bernay*, No. 12 C 8239, 2013 WL 453197, at *2 (N.D. Ill. Feb. 6, 2013).

Although the parties agree that contract negotiations occurred primarily via telephone and email, WRP points out that Giancaterino traveled to Youngstown, Ohio more than once during this period. Moreover, WRP argues that it executed the contract in Youngstown. This point is blunted, however, by the fact that Broadridge's signatory executed the contract in New Jersey.

The parties disagree about the location of "the business decision causing the breach." *Handler v. Kenneth Allen & Assocs., P.C.*, No. 10 C 3728, 2011 WL 1118499, at *2 (N.D. Ill. Mar. 24, 2011). WRP, without referring to its actions as a breach, states "the focal point of the data issues was, and will be, Youngstown . . . not Indiana." (Dft.'s Mot. 10) (ellipsis in original). This argument is not well taken, however, as WRP also argues, and raises as an affirmative defense, that Broadridge was the breaching party because it did not fulfill its contractual

5

obligations. (Dft.'s Mot. 5-6; Docket # 11.)  Any breach by Broadridge must have occurred in Fort Wayne, Indiana, as that is exclusively where Broadridge performed its services under the contract.  Because WRP and Broadridge each argue that the opposing party breached the contract, and because these alleged breaches took place in both Youngstown and Fort Wayne, this factor favors neither party.

Recognizing the diluted and unpersuasive significance of these first three points, the parties focus their arguments on the location of the services performed with each arguing that their respective home forum prevails.  For its part, WRP argues that its historical data was uploaded to the file transfer protocol site at its Youngstown headquarters.  Unfortunately, WRP does not detail how intensive this process was, what work it–as opposed to Albridge–was responsible for, or even how long this process took.  Instead, WRP merely proffers that Albridge sent it the data, and WRP uploaded it.

In contrast, Broadridge argues that the overwhelming majority of the services were performed in Indiana as ten of its employees spent in excess of 1600 hours working in its Fort Wayne office creating the new software platform, and transferring, processing, reviewing, and analyzing WRP's historical data.  Because Broadridge provides concrete examples of the type and amount of work performed, its argument that the majority of services under the contract were performed in Fort Wayne, Indiana is persuasive.

In sum, since the contract was mostly negotiated via telephone and email and executed in separate locations, and since the alleged breaching activity occurred in both Youngstown and Fort Wayne, this factor turns on where the services were performed.  Because the majority of the services were performed by Broadridge from its Fort Wayne office, the first and second factors

6

weigh slightly in favor of Broadridge.

### 3. Access to Sources of Proof

Both parties agree that the evidence in this case will primarily be documentary, with WRP and Broadridge each averring that the majority of the documentary evidence is within their respective possessions. As the parties recognize, however, "documents and records are easily transportable (and, indeed, must be copied and delivered to the opponent no matter where the case will be litigated)[,] and their location is not a persuasive reason for transfer." *Simonoff v. Kaplan, Inc.*, No. 09 C 5017, 2010 WL 1195855, at *2 (N.D. Ill. Mar. 17, 2010). As a result, this factor is neutral.

### 4. Convenience to the Parties

WRP argues that because of Broadridge's "vastly superior resources" both in terms of finances and number of employees, it is more convenient to litigate this case in the Northern District of Ohio. According to WRP, because it is a family-run small business, while Broadridge has over 5,000 employees and had $2 billion in revenue in 2013, it is clearly more convenient to litigate the case in its home forum.

WRP's argument is misleading. Although the parties' respective abilities to bear the expense of litigation is considered, the focus is on the "likelihood of financial hardship to the parties." *General Binding Corp. v. Board Dudes, Inc.*, No. 04 C 4466, 2004 WL 2657776, at *1 (N.D. Ill. Oct. 28, 2004). As Broadridge points out, WRP reported $48 million in gross revenue in 2013, and WRP has not argued that it cannot bear the costs of litigating in this forum. Moreover, it is approximately only a four hour drive from Fort Wayne to Youngstown, thus the difficulties and expenses associated with travel are nominal.

7

"When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience; and when the inconvenience of the alternative venues is comparable there is not basis for a change of venue; the tie is awarded to the plaintiff[.]" *Bajer*, 2009 WL 1849813, at *3 (alteration in original) (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 665 (7th Cir. 2003)). Transferring the case from the Northern District of Indiana to the Northern District of Ohio "would merely serve to transform 'an inconvenience for one party into an inconvenience for the other party." *Id.*, at *3 (quoting *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 216 (N.D. Ill. 1993)). Accordingly, the tie here is awarded to Broadridge.

### 5. Convenience to the Witnesses

Notwithstanding the analysis to this point, "the primary concern is not the convenience to the parties but the convenience to the witnesses-non-party witnesses, in particular." *21 SRL v. Newegg Inc.*, No. 09-cv-6590, 2010 WL 1178066, at *3 (N.D. Ill. Mar. 24, 2010) (citation omitted). In fact, "convenience of the witnesses is often considered the most important factor in the transfer analysis." *Body Science v. Boston Scientific Corp.*, 846 F. Supp. 2d 980, 995 (N.D. Ill. 2012).

"Convenience considerations include . . . the number of witnesses involved, travel distances and associated costs for these witnesses, the willingness of witnesses to appear, or whether the witness is within the court's reach to compel appearance." *Lawrence v. Swift Transp. Co.*, No. 1:07-cv-197, 2007 WL 3334788, at *3 (S.D. Ind. Nov. 7, 2007). "In the instant case, each side, of course, claims inconvenience to its witnesses should they have to travel to the other forum." *Id.*

Broadridge and WRP have each identified one non-party witness within their respective

8

home court's subpoena power: Broadridge's non-party witness, Kevin Lowe, (a former Broadridge employee heavily involved in the attempted implementation of the platform) currently resides in Indianapolis, and WRP's non-party witness, David Peters (WRP's outside information technology consultant) currently resides in Youngstown. In regard to the other non-party-witnesses, both Broadridge and WRP anticipate calling a Denver based witness, and witnesses located in Pennsylvania and New Jersey. As the parties recognize, regardless of forum, these witnesses are outside either court's jurisdiction and they will have to travel to the Midwest. Given the relative proximity of the two Courts (approximately 260 miles), the difference in travel time is insignificant and does not strongly favor either party.

Because WRP and Broadridge have each identified one non-party witness located within the jurisdiction of their home court, and because the remaining non-party witnesses will have similar travel times regardless of forum, this factor is neutral.

In sum, because the first, second, and fourth factors support Broadridge and the remaining factors are neutral, the convenience to the parties and witnesses considerations favor this Court retaining the action.

### B. *Interests of Justice*

The interests of justice inquiry "is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2008). Factors such as speed to trial or disposition in the transferor and potential transferee forums, each court's familiarity with the relevant law, each court's desirability of resolving controversies, and the relationship of each community to the controversy are considered. *Id.*

9

### 1. Speed to Trial and Disposition

In evaluating docket speed the Court looks to the Federal Court Management Statistics to determine time from filing to disposition and time from filing to trial. *Palmer-Tech Servs. v. Alltech, Inc.*, No 14 C 1005, 2014 WL 1758452, at *4 (N.D. Ill. Apr. 30, 2014); *JDA eHealth Sys., Inc. v. Chapin Revenue Cycle Mgmt., LLC*, No. 10 C 7781, 2011 WL 2518938, at *13 (N.D. Ill. June 23, 2011). The most recent statistics evidence that in the Northern District of Indiana the median time from filing to disposition and trial in civil cases is 11.0 and 31.8 months respectively. By comparison, in the Northern District of Ohio the median time from filing to disposition is 8.5 months and from filing to trial 14.9 months. Federal Court Management Statistics March 2014, *available at* http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (last visited Aug. 27, 2014). Accordingly, this factor weighs slightly in favor of transfer.

### 2. Familiarity with Applicable Law

As both parties recognize, the contract's choice of law clause indicates that the agreement is governed by New York state law, and that the Northern Districts of Ohio and Indiana are presumably equally capable of applying New York state law to the breach of contract claim.

Broadridge goes on to point out, however, that its unjust enrichment claim is not premised on the terms of the agreement, and therefore, is not controlled by this choice of law provision. According to Broadridge, because the case was filed here, Indiana's choice of law provision applies,[2] and that choice of law analysis suggests that Indiana state law governs the

---

[2] Indiana's choice of law provisions apply even if this case was transferred to the Northern District of Ohio. *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 383 (7th Cir. 2003) ("Although a court sitting in diversity normally applies the choice-of-law rules of the state in which it sits, when a case has been transferred from another district, the court instead applies the choice-of-law rules that the court in the transferring state would

unjust enrichment claim. (Pls.' Resp. 15-16.)  From this analysis, Broadridge concludes that this factor favors keeping the case in the Northern District of Indiana, as "the Seventh Circuit Court of Appeals has recognized that in diversity cases, it is 'advantageous to have federal judges try a case who are familiar with the applicable state law.'" *OmniSource*, 2008 WL 2756345, at *8 (quoting *Coffee*, 796 F.2d at 221).

Nevertheless, Broadridge's choice of law analysis is premature.  While Indiana's "'choice of law rules will apply to this action irrespective of whether this court transfers this case[],' we need not conduct that full analysis at this stage." *Handler*, 2011 WL 1118499, at *4 (quoting *Vandeveld v. Cristoph*, 877 F. Supp. 1160, 1169 (N.D. Ill. 1995)).  "What is presently relevant is the fact that '[g]enerally contract law is not particularly complex'" and both Courts are capable of applying each other's state contract law. *Id.*; *see Palmer-Tech Servs., Inc.* at 2014 WL 1758452 at *4 ("This is a routine contract dispute, and both courts are equally familiar with the underlying law").  Accordingly, this factor is neutral.

### 3. Relationship of Communities to Litigation

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997).  Because Broadridge and WRP respectively maintain their principal places of business in Indiana and Ohio, both forums have an interest in providing their residents with a convenient forum. *Capstone*, 2011 WL 4529380, at *5.  Accordingly, this factor is also neutral.

In sum, although the speed to trial and disposition favors transferring this case to the Northern District of Ohio, the remaining two factors are neutral.  Given that the convenience to

---

apply.").

the parties and witnesses are neutral factors or favor keeping the case in the Northern District of Indiana, WRP has failed to show that the Northern District of Ohio is "clearly more convenient." *Coffey*, 796 F.2d at 219-20. Accordingly, WRP's motion will be denied.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion to transfer this action to the Northern District of Ohio (Docket # 14) is DENIED.

SO ORDERED.

Enter for this 28th day of August 2014.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge
